UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

AMAURY MODESTO,

　　　　　　　　　　　　Defendant.

**ORDER**

17 Cr. 251 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

　　　　　On September 14, 2018, Defendant Amaury Modesto pled guilty to conspiring to distribute and possess with intent to distribute 500 grams and more of cocaine, in violation of 21 U.S.C. § 846 and 841(b)(1)(B).  (Aug. 16, 2018 Plea Agreement; Sept. 14, 2018 Plea Tr. (Dkt. No. 182))  This Court accepted Modesto's plea on November 28, 2018 (Dkt. No. 198), and he was remanded on December 6, 2018.  (See Dkt. No. 200)

　　　　　Modesto's guilty plea arose from his involvement in the "Mosholu Money Over Bitches" gang, which sold crack cocaine, oxycodone, and marijuana in and around the Norwood section of the Bronx.  (Jan. 22, 2019 Sentencing Tr. (Dkt. No. 225) at 6)  Modesto obtained cocaine from Joshua Perez, the leader of the gang, and also obtained cocaine from others, which he then re-sold.  Modesto did not sell crack cocaine himself, and when customers approached him to buy crack cocaine, he referred them to other members of the organization.  (PSR ¶ 19; Aug. 3, 2020 Govt. Ltr. (Dkt. No. 307) at 2)  In his plea agreement, Modesto accepted responsibility for conspiring to distribute approximately 3.4 kilograms of cocaine.  (Aug. 16, 2018 Plea Agreement at 2)

　　　　　At sentencing, Modesto faced a Sentencing Guidelines range of 60 to 63 months' imprisonment as a result of the applicable statutory minimum mandatory sentence of 60 months'

imprisonment.  (Jan. 22, 2019 Sentencing Tr. (Dkt. No. 225) at 4, 7; see also 21 U.S.C. §

841(b)(1)(B))  This Court sentenced Modesto to the mandatory minimum sentence of five years'

imprisonment.  In doing so, this Court noted that "if [the Court] had discretion[, it] would likely

impose a sentence of less than 60 months given that the defendant last committed a crime 20 odd

years ago, has been married for 17 years, has raised five children and has been steadily

employed. As it is, [the Court is] required to impose a mandatory minimum of 60 months. . . ."

(Id. at 8)  The Court also sentenced Modesto to four years' supervised release.  (Id.; Am.

Judgment (Dkt. No. 251) at 2-3)

       Modesto was remanded on December 6, 2018, after this Court accepted his guilty

plea.  He is serving his sentence at the United States Penitentiary at Lewisburg ("USP

Lewisburg").  (Def. Mot. (Dkt. No. 303) at 2)  He has served approximately 20 months of his 60-

month sentence, and has a release date of March 9, 2023.  (Id.)

       At some point prior to April 29, 2020, Modesto filed an application for

compassionate release with the warden of USP-Lewisburg.  The warden denied his application

on April 29, 2020.  (Def. Mot., Ex. E (Dkt. No. 303-24; Def. Mot. (Dkt. No. 303) at 17)  On July

24, 2020, Modesto filed a motion with this Court for compassionate release, pursuant to 18

U.S.C. § 3582(c)(1)(A)(i).  (Def. Mot. (Dkt. No. 303) at 1)  Modesto contends that he is entitled

to compassionate release because he "suffers from an increased risk of a heart attack and kidney

damage, and also suffers from hypertension, anxiety and depression, obesity, and has a 20-year

history of smoking."  Modesto further contends that he "presents no threat to the community."

(Id. at 5)

       The Government agrees that Modesto has exhausted his administrative remedies

(Govt. Opp. (Dkt. No. 307) at 3; see also 18 U.S.C. § 3582(c)(1)(A)(1)), and further "agrees that,

2

in light of the COVID-19 pandemic and the CDC's recent revisions to its COVID-19 guidance on risk factors (particularly obesity) for severe COVID-19 illness, the defendant has demonstrated extraordinary and compelling reasons [for release] under 18 U.S.C. § 3582(c)(1)(A)." (Govt. Opp. (Dkt. No. 307) at 3) The Government nonetheless opposes Modesto's application for compassionate release, arguing that "the Section 3553(a) factors weigh against the defendant's compassionate release and his motion should therefore be denied." (Id.)

   For the reasons stated below, Modesto's application will be granted.

**DISCUSSION**

I.  **LEGAL STANDARD**

   The compassionate release statute – 18 U.S.C. § 3582(c)(1)(A)(i) – provides that a court may

> upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . , reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction. . . .

18 U.S.C. § 3582(c)(1)(A)(i).

   Pursuant to the statute, a defendant seeking compassionate release must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days [must have lapsed] from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A).

   A court considering an application for compassionate release must weigh the sentencing factors set forth in 18 U.S.C. § 3553(a); determine whether there are "extraordinary and compelling reasons [that] warrant such a reduction"; and consider whether a sentencing

3

"reduction is consistent with applicable policy statements issued by the Sentencing

Commission."  (Id.)

## II.   ANALYSIS

### A.   Exhaustion of Administrative Remedies

It is undisputed here that Modesto has exhausted his administrative remedies.

(Def. Mot. (Dkt. No. 303) at 17; Govt. Opp. (Dkt. No. 307) at 3)  18 U.S.C. § 3582(c)(1)(A)

provides that a court may reduce a defendant's sentence "after the defendant has fully exhausted

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier."  Here, as discussed above, Modesto applied to the

warden of his facility – USP-Lewisburg – for compassionate release.  On April 29, 2020, the

warden denied his request.  (See Def. Mot., Ex. E (Dkt. No. 303-24); Def. Mot. (Dkt. No. 303) at

17)  Accordingly, Modesto has exhausted his administrative remedies through the Bureau of

Prisons ("BOP").

### B.   Section 3553(a) Factors

18 U.S.C. § 3553(a) directs a sentencing court to consider

(1) the nature and circumstances of the offense and the history and
characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for
the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> > (3) the kinds of sentences available;
>
> > (4) the kinds of sentence and the sentencing range established for –
>
> > > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .
>
> > (5) any pertinent policy statement—
>
> > > (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28) . . .
>
> > (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> > (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Modesto has been in custody since December 6, 2018, after this Court accepted his guilty plea. (Dkt. No. 198)  At sentencing, the Court sentenced Modesto to the statutory mandatory minimum of five years' imprisonment.  (Jan. 22, 2019 Sentencing Tr. (Dkt. No. 225) at 8)  As noted above, Modesto has served approximately 20 months of his 60 month sentence. Assuming that he were to receive full good-time credit, he would serve 85% of his 60 month sentence (see 18 U.S.C. § 3624(b)(1) ("a prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence of up to 54 days for each year of the prisoner's sentence imposed by the court"), which correlates with potential release to a halfway house in or about March 2022 and full release in March 2023.  See 18 U.S.C. § 2634(c)(1) ("The

5

Director of the Bureau of Prisons shall . . . ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.  Such conditions may include a community correctional facility.").

   The Court carefully considered the Section 3553(a) factors at sentencing.  As to the nature of Modesto's offense – as discussed above – Modesto's guilty plea arose from his involvement in the "Mosholu Money Over Bitches" gang, which sold crack cocaine, oxycodone, and marijuana in and around the Norwood section of the Bronx.  (Jan. 22, 2019 Sentencing Tr. (Dkt. No. 225) at 6)  Modesto obtained cocaine from the gang's leader – Joshua Perez – which he re-sold, and also obtained cocaine from others, which he likewise re-sold.  Modesto did not sell crack cocaine himself, and when customers approached him to buy crack cocaine, he referred them to other members of the organization.  (PSR ¶ 19; Aug. 3, 2020 Govt. Ltr. (Dkt. No. 307) at 2)  As discussed above, at sentencing, the parties agreed that Modesto's offense involved at least 3.4 kilograms of cocaine.  (PSR ¶¶ 8, 29, 36, at 20; Jan. 22, 2019 Sentencing Tr. (Dkt. No. 225) at 6; see also Aug. 16, 2018 Plea Agreement at 2)

   As to Modesto's personal history and characteristics, the record showed a highly unusual degree of stability for someone engaged in narcotics trafficking.  38 years old at the time of sentence, Modesto had been married for seventeen years and raised five children, who ranged in age from one year to sixteen years old.  The Court received sentencing submissions that convincingly demonstrated that Modesto had been a good husband and a good father.  As to employment, Modesto had worked consistently since 2012, and he submitted paystubs showing that, since September 2017, he had been working in shipping and receiving.  Although Modesto had a 1999 conviction for criminal possession of a controlled substance in the second degree, he

was released to parole in 2001 and had not suffered another arrest or conviction until his arrest in the instant case on April 27, 2017.  (Jan. 22, 2019 Sentencing Tr. (Dkt. No. 225) at 6-7; PSR ¶¶ 47, 55, 68)  Moreover, Modesto was seventeen years old when arrested on the earlier case.  (PSR ¶ 47)  Finally, Modesto was on pretrial release from April 27, 2017 until December 6, 2018, and was "in compliance with all terms and conditions of his pretrial release" during that twenty-month period.  (PSR at 25)

These circumstances suggested that Modesto did not present a high risk of recidivism.  At sentencing, this Court stated that "if [it] had discretion[, it] would likely impose a sentence of less than 60 months given that the defendant last committed a crime 20 odd years ago, has been married for 17 years, has raised five children and has been steadily employed.  As it is, [the Court is] required to impose a mandatory minimum of 60 months and that is what [the Court] intend[s] to do."  (Jan. 22, 2019 Sentencing Tr. (Dkt. No. 225) at 8)

Given that this Court expressed the view at sentencing that a 60-month sentence was excessive, a reduction in Modesto's sentence now would be consistent with the Section 3553(a) factors.

### C.   "Extraordinary and Compelling Reasons"

In order to prevail on his compassionate release motion, Modesto must demonstrate that "extraordinary and compelling reasons warrant . . . a reduction" in his sentence, and that any reduction that is granted comports with "applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with providing guidance to courts regarding the application of the compassionate release statute.  See 18 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification

provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. . . ."); United States v. Ebbers, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020); see also Hernandez, No. 18 Cr. 834 (PAE), Dkt. No. 451.

The Commission's policy statement and commentary concerning Section 3582(c)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).

Finally, a defendant seeking compassionate release must demonstrate that his release will not present a danger to the community.  U.S.S.G. § 1B1.13(2)-(3).

Here, Modesto argues that he is entitled to compassionate release because he

> suffer[s] from a multitude of physical and mental conditions, including but not limited to depression and anxiety, obesity, and past substance abuse.  Not noted at the time [of sentencing], but relevant here, Mr. Modesto was a 20-year old cigarette smoker and has a history of hypertension.  In 2016, he experienced chest pains and numbness in his arm and he was treated at North Central Bronx Hospital emergency room, where he was diagnosed as suffering from Rhabdomyoysis, which is the breakdown of muscle and results in the release of myoglobin in the bloodstream.  Too much myoglobin in the blood can cause kidney damage.  This diagnosis, relating to his body-building and steroid use, leaves him at increased risk to suffer a heart attack and kidney damage. . . . Dr. David Hodges, a board-certified cardiologist, [has] reviewed Mr. Modesto's hospital records and selected pages of Mr. Modesto's emergency room visit in 2016.  Dr. Hodges, upon reviewing these records, determined that there is a "significant possibility" that Mr. Modesto suffers from underlying kidney and heart disease and that "he is at risk for a poor outcome if he develops COVID."

(Def. Mot. (Dkt. No. 303) at 2)

8

Modesto further contends that USP-Lewisburg, where he is incarcerated, is a "tinderbox for COVID-19 infection."  (Id. at 3)  Defense counsel reports that on July 31, 2020, USP-Lewisburg reported eighteen cases of COVID-19 among inmates at the penitentiary.  The next day – August 1, 2020 – it reported 35 cases of COVID-19 in the inmate population.  (Def. Reply (Dkt. No. 308) at 1)  In a recent letter submitted to Judge Dearie in the Eastern District of New York, the Government represents that between July 15, 2020 and August 7, 2020, the number of positive COVID tests in the inmate population at USP-Lewisburg grew from zero to 46.  (Aug. 7, 2020 Govt. Ltr., United States v. Carlos Mateo, 17 Cr. 390 (RJD) (Dkt. No. 543) at 2)

The Government contends that Modesto has not demonstrated that he suffers from many of the conditions cited by counsel:

> For instance, Modesto claims that he suffers from a history of hypertension (Def. Mot. 18), but offers no support for this diagnosis. To the contrary, his medical records from BOP reflect that he reported a family history of hypertension (see Exhibit A, filed under seal), that his blood pressure has been taken regularly since his incarceration, has always been in the normal range, and that Modesto has denied any personal history hypertension multiple times, as recently as September 19, 2019.  Modesto's additional claim that he suffers from rhabdomyosis is only partially supported by hospital records from 2016.  If anything, the 2016 hospital records suggest that Modesto's diagnosis was of limited duration, brought on by his steroid use and body building.  With respect to his history of smoking (Def. Mot. 20), the most recent CDC guidance states that this "might" contribute to heightened susceptibility to severe COVID-19 illness, but not to the same extent as obesity.  The CDC has never recognized anxiety or depression as risk factors for severe COVID-19 illness.  (Def. Mot. 19).

(Aug. 7, 2020 Govt. Ltr. at 4 n.1)

Modesto's BOP medical records show that he denied a history of cardiovascular disease, hypertension, or other medical problems in December 2018, when taken into custody, and repeated the same denials to BOP medical personnel in April 2019 (Govt. Opp., Ex. 1A at 2, 7) and in September 2019.  (Govt. Opp., Ex. 1B at 9, 14)  His blood pressure has been within the

normal range while in custody: 120/60 in December 2018 (Govt. Opp., Ex. 1A at 4-5), 122/76 in

April 2019 (id. at 11), and 121/73 in June 2020 (Govt. Opp., Ex. 1B at 1).

        The Government agrees, however, that Modesto suffers from obesity:  "Based on

values reflected in the PSR (PSR ¶ 58) and the defendant's most recent BOP medical records

(Exhibit 1), his BMI is either 30.9 or 32.3.  Modesto qualifies as obese on either calculation. . . ."

(Govt. Opp. (Dkt. No. 307) at 4)  Those who are obese are more susceptible to becoming

infected with the COVID-19 virus, and have a poorer prognosis once infected.  Centers for

Disease Control and Prevention, Coronavirus Disease 2019 (COVID-19):  People with Certain

Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-

precautions/people-with-medical-

conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-

ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last accessed Aug. 13, 2020).

        The Government agrees that – based on Modesto's obesity – he has proffered

"extraordinary and compelling reasons" justifying his release.  (Govt. Opp. (Dkt. No. 307) at 3-4

("The Government does not dispute that the defendant satisfies the 'extraordinary and

compelling reasons' inquiry for a reduction in sentence under Title 18, United States Code,

Section 3582(c)(1)(A)(i). . . . and, therefore, has established that extraordinary and compelling

reasons warrant his release."))

        Although the Government agrees that Modesto has demonstrated "extraordinary

and compelling reasons" justifying his release, the Government contends that his motion for

compassionate release should be denied, because the Section 3553(a) factors weigh against

release:

        His offense conduct was neither minor nor aberrant:  he bought and sold
        distribution quantities of cocaine, a dangerous drug, which put his community at

risk.  Drugs and firearms go hand in hand, as Modesto is well aware; his prior narcotics conviction involved a firearm.  Notwithstanding that prior conviction, which resulted in a four-year prison sentence, the defendant chose to return to the drug trade.  The defendant here sold cocaine notwithstanding his personal knowledge of the consequences and his proven ability to secure legitimate employment.  Clearly that prior sentence did not adequately deter Modesto.  . . . Modesto has served just 20 months of his 60-month sentence, for a second, serious narcotics conviction.  On this record, Modesto's motion for compassionate release should be denied.

(Govt. Opp. (Dkt. No. 307) at 5)

As discussed above, however, the Court found – at sentencing – that the five-year sentence it was required to impose by statute was excessive.  (Jan. 22, 2019 Sentencing Tr. (Dkt. No. 225) at 8)  Acknowledging that Modesto has a prior narcotics trafficking conviction, he sustained that conviction in 1999 at age seventeen.  The record indicates that he was law abiding over the next eighteen years.  The record also indicates that he has been married for nearly twenty years, that he has raised five children, and that he has been a good husband and good father.  Modesto has also demonstrated lawful employment since 2012.  (Id. at 6-8; PSR ¶¶ 47, 68-73)

Modesto was on pretrial release from April 27, 2017 until December 6, 2018, and was "in compliance with all terms and conditions of his pretrial release" during that twenty-month period.  (PSR at 24)  Modesto's spotless record while on pretrial release for twenty months suggests that he is susceptible to community supervision.

Modesto is now over forty years old (see PSR at 3); demographic data indicates that he is aging-out of the years most prone to criminal activity.

Finally, Modesto has a job as a parking attendant waiting for him upon his release.  (Def. Mot. (Dkt. No. 303) at 5; Def. Mot., Ex. D (Dkt. No. 303-22))

Based on all of these circumstances, the Court concludes that Modesto does not present a high risk of recidivism.

Balanced against these factors is the reality that Modesto faces a risk of contracting the COVID-19 virus at USP-Lewisburg.  As of August 11, 2020, eighteen inmates and one staff member at USP-Lewisburg have an active case of COVID-19; thirty-four inmates and one staff member have recovered from the virus.  Fed. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last accessed Aug. 11, 2020).  Given that Modesto suffers from obesity, it is undisputed that he is at greater risk of contracting the virus, and has a poorer prognosis if infected.

## **CONCLUSION**

For the reasons stated above, Defendant Modesto's application for compassionate release is granted, and he is hereby placed on supervised release.  The terms and conditions of Modesto's supervised release (see Am. Judgment (Dkt. No. 251)) are amended as follows:

1.  The Defendant shall serve the first six months of his supervised release term on home confinement, to be enforced by GPS monitoring, at a residence approved by the Probation Department.  In light of the COVID-19 pandemic, the Defendant must remain at his approved residence except to seek any necessary medical treatment, in each instance with prior notice and approval by the Probation Department.

2.  The Defendant is to possess or have access to a telephone that will allow video conferencing by the Probation Department.

3.  The Defendant is to report to the Probation Department at 500 Pearl Street, 6th floor, New York, New York, on August 31, 2020 at 10:00 a.m. (following fourteen days of self-quarantine) to have the GPS device affixed to his ankle.

Dated: New York, New York
       August 13, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge

13